11-CV-324 (JFB)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

RASHEKE BOYD,

*Petitioner,*

- against -

PATRICK GRIFFIN, Superintendent,
Southport Correctional Facility,

*Respondent.*

## RESPONDENT'S SUPPLEMENTAL AFFIDAVIT AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

**KATHLEEN M. RICE**
*District Attorney, Nassau County*
*Attorney for Respondent*
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

Tammy J. Smiley
Cristin N. Connell
  Assistant District Attorneys
    *Of Counsel*
Andre K. Cizmarik
  Assistant District Attorney
  Serving in a Pro Bono Capacity

TABLE OF CONTENTS

Page

Supplemental Affidavit in Opposition to
   Petition for a Writ of Habeas Corpus ......................... i

Respondent's Memorandum of Law
   Statement of Facts ......................................... 1

Argument
   Petitioner Received The Effective Assistance
   of Appellate Counsel ....................................... 2

Conclusion .................................................... 9

Certificate of Service

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RASHEKE BOYD,

               Petitioner,

-against-

PATRICK GRIFFIN, Superintendent,
Southport Correctional Facility,

               Respondent.

SUPPLEMENTAL AFFIDAVIT IN
OPPOSITION TO PETITION FOR
A WRIT OF HABEAS CORPUS

11-CV-324 (JFB)

---

I, CRISTIN N. CONNELL, being sworn, depose and states as follows:

1.     I am an assistant district attorney of counsel to the District Attorney of the County of Nassau, and am admitted to practice before this Court.

2.     This affidavit is submitted pursuant to this Court's order of February 10, 2014, granting respondent the opportunity to file a supplemental response to petitioner's renewed application for a writ of habeas corpus.

3.     Unless otherwise indicated, this affidavit is made upon information and belief, based upon the records and files of the Nassau County District Attorney's Office.

4.     At approximately 3:00 a.m. on May 14, 2005, petitioner and two other young men wearing masks entered the Publick House Pub in Rockville Center, Long Island. The men brandished handguns and ordered everyone to the floor, after which one of the assailants shot a patron as he exited the bathroom, and shot another patron multiple times as he lay defenseless on the floor. The men emptied the cash register and stole money and cellphones from the patrons before fleeing. When the police

arrived at the crime scene, they recovered spent bullets from a small caliber handgun and a mask.

5. Approximately four months later, shortly before midnight on August 23, 2005, petitioner and the same two other young men entered the Corner Pub in West Hempstead, Long Island, with bandanas covering their faces and gloves on their hands. The first to enter waved a silver handgun and ordered everyone to lie on the floor. The two others entered wielding sledge hammers and a second gun. The first assailant jumped over the bar and demanded to know the location of the safe. He then emptied money from the safe and took a cordless telephone handset. The other two assailants moved around the bar demanding wallets and jewelry. One victim, Joseph Cartalano, surrendered his wallet, but was nonetheless pistol whipped by petitioner. A second victim, retired New York City Police Officer, Arthur Maloney, witnessed the unprovoked attack on Mr. Cartalano. Mr. Maloney was concerned that if he surrendered his wallet and the assailants discovered his police I.D., they might assume that he was armed and kill him. He therefore refused to relinquish his wallet and instead grabbed one of the assailants. A second assailant repeatedly pummeled Mr. Maloney with a sledge hammer before all three assailants fled. The sledge hammer was later recovered by the police.

6. An hour or so later, at approximately 1:25 a.m. on August 24, 2005, petitioner and his co-defendants failed to stop for a red light while traveling in a car in Brooklyn, New York. The car was stopped by police officers from the New York City Police Department and, while approaching the vehicle, an officer witnessed the front passenger attempting to conceal an object that appeared to be a handgun. All three

men were removed from the vehicle and placed under arrest. After an investigation by the Nassau County Police Department, during which petitioner and one of his co-defendants made incriminating statements, the police determined that they were suspects in the robberies in Rockville Centre and West Hempstead.

7. Petitioner and his co-defendants were arrested and petitioner was charged, by Nassau County Indictment No. 2495N/05, with four counts of robbery in the first degree (Penal Law § 160.15[2] [counts one, two, seven, and eight]), two counts of attempted murder in the second degree (Penal Law §§ 110.00/125.25[1] [counts three and four]), two counts of assault in the first degree (Penal Law § 120.10[1] [counts five and six]), one count of attempted robbery in the first degree (Penal Law §§ 110.00/160.15[2] [count nine]), and one count of assault in the second degree (Penal Law § 120.05[2] [count ten]).

8. After pleading guilty on June 14, 2006, petitioner was sentenced to a determinate term of twenty years' imprisonment and five years of post-release supervision, with respect to each of counts one through eight of the indictment. For count nine, petitioner was sentenced to a determinate term of fifteen years' incarceration and for count ten, he was sentenced to a determinate term of seven years' incarceration. The sentences on the last two counts were ordered to run concurrently with the twenty-year sentences, and each included a sentence of three years' post release supervision. Petitioner was ordered to pay restitution in the amount of $12,486.73, and orders of protection were issued for the victims.

9. Petitioner was assigned counsel and appealed from his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department

(hereinafter "Appellate Division"). In his brief, petitioner argued that the police did not have probable cause to stop the vehicle in which he was traveling, and the trial court's failure to make such a determination resulted in a violation of his due process rights under the New York and United States Constitutions. Respondent opposed, arguing that the police officers lawfully stopped petitioner's car for failing to stop at a red light and the hearing court's decision was fully supported by the credible testimony introduced at the hearing.

10. The Appellate Division, in a decision and order dated December 8, 2009, found that petitioner's claim that the police did not have probable cause to stop his car was unpreserved for appellate review and, in any case, the stop of petitioner's vehicle was lawful. People v. Boyd, 68 A.D.3d 889 (2d Dept. 2009).

11. Petitioner applied for leave to appeal to the New York Court of Appeals, and, on April 19, 2010, that application was denied by the Court of Appeals. People v. Boyd, 14 N.Y.3d 838 (2010).

12. On or about January 13, 2011, petitioner sought federal habeas corpus relief on the following grounds: (1) the police allegedly did not have probable cause to stop petitioner's vehicle and the trial court's failure to make such determination resulted in a violation of petitioner's due process rights under the New York and United States Constitutions; (2) petitioner allegedly received ineffective assistance of trial counsel; and (3) petitioner allegedly received ineffective assistance of appellate counsel.

13. Pursuant to this Court's Order to Show Cause, dated May 3, 2011, respondent filed an affirmation and memorandum of law in opposition to the habeas petition. Respondent argued that petitioner's contentions, including his claim of

ineffective assistance of appellate counsel, were wholly without merit, and several of petitioner's claims were procedurally barred.

14. On May 7, 2012, this Court granted petitioner's request to exhaust his ineffective assistance of appellate counsel claim in state court and held the habeas in abeyance. On or about June 4, 2012, petitioner filed a motion for a writ of error coram nobis in the Appellate Division. In this motion, petitioner raised the same claims already set forth in his habeas petition. Respondent opposed petitioner's motion and, on October 10, 2012, the motion was denied. People v. Boyd, 99 A.D.3d 811 (2d Dept. 2012). In its decision, the Appellate Division found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." Id. (citing Jones v. Barnes, 463 U.S. 745 [1983] and People v. Stultz, 2 N.Y.3d 277 [2004]). On March 11, 2013, the Court of Appeals denied leave to appeal from the decision of the Appellate Division. People v. Boyd, 20 N.Y.3d 1096 (2013).

15. By letter dated December 9, 2013, petitioner informed this Court that he had exhausted the ineffective assistance of counsel issues in state court, and petitioner submitted the state court record on January 23, 2014.

16. On February 10, 2014, this Court offered respondent the opportunity to file a supplemental opposition addressing the ground of the petition for a writ of habeas corpus that alleged ineffective assistance of appellate counsel.

17. By raising his claim of ineffective assistance of appellate counsel in his recent application for a writ of error coram nobis, petitioner has exhausted that claim. The claim remains, however, patently meritless. Petitioner alleged that he received ineffective assistance of appellate counsel due to appellate counsel's failure to raise five

issues on appeal (see petition at 7). The record demonstrates, however, that appellate counsel's decision to forgo these arguments was both well-reasoned and tactical. Indeed, raising any of them would have been futile, and thus, failure to raise them would not have prejudiced petitioner. See Murray v. Carrier, 477 U.S. 478, 487-88 (1986) (Strickland standard applies to appellate counsel's failure to raise claim on direct appeal); Jones v. Barnes, 463 U.S. 745, 754 (1983) (appellate counsel is not required to raise every possible issue, and reasonable professional judgments by defendant's appellate counsel as to what were defendant's most promising issues on appeal should not be second-guessed); see also Cantone v. Superintendent, N.Y. Correctional Facility, 759 F.2d 207, 218-19 (2d Cir. 1985); Pendleton v. Scully, 664 F.Supp. 100, 105 (S.D.N.Y. 1987).

WHEREFORE, and for the reasons set forth in the accompanying memorandum of law, petitioner's application for a writ of habeas corpus should be denied.

/s/
CRISTIN N. CONNELL
Assistant District Attorney

Sworn to before me this
25th day of March, 2014

/s/
Notary Public

*Marie L. Murphy*
*Notary Public State of New York*
*Nassau County, LIC.#01MU4939165*
*Comm. Exp. 08/01/14*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RASHEKE BOYD,<br><br>                            Petitioner,<br><br>       -against-<br><br>PATRICK GRIFFIN, Superintendent,<br>Southport Correctional Facility,<br><br>                            Respondent. | 11-CV-324 (JFB) |

## RESPONDENT'S MEMORANDUM OF LAW

                                          Respectfully submitted,

                                          Kathleen M. Rice
                                          *District Attorney, Nassau County*
                                          *Attorney for Respondent*
                                          262 Old Country Road
                                          Mineola, New York 11501

Tammy J. Smiley
Cristin N. Connell
  Assistant District Attorneys
    *Of Counsel*
Andre K. Cizmarik
  Assistant District Attorney
  Serving in a Pro Bono Capacity

## STATEMENT OF FACTS

Respondent relies on the summary of the plea and other proceedings set forth in its original Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus (pp. 1-11). Any additional facts relevant to a determination of the issues raised in petitioner's application for a writ of habeas corpus are set forth in the argument below. The pertinent procedural history of petitioner's case is summarized in the affidavit that accompanies this Memorandum of Law. See Respondent's Affidavit, ¶¶ 4-16.

## ARGUMENT

<u>Petitioner Received The Effective Assistance Of Appellate Counsel.</u>

A petitioner seeking relief based upon a claim of ineffective assistance of counsel must show that counsel's performance was less than reasonably competent and that the deficient performance prejudiced the petitioner, i.e., but for the deficient performance, there is a "reasonable probability the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 669, 694 (1984). That standard applies to both trial and appellate counsel. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 404 (1985); <u>see also</u> <u>Clark v. Stinson</u>, 214 F.3d 315, 321 (2d Cir. 2000). A corollary to that standard is the long-standing rule that an appellate counsel need not raise every colorable claim on appeal. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983).

None of the issues petitioner claims his appellate counsel should have raised has merit. The record demonstrates that the hearing court correctly found that: (1) the gun recovered from petitioner's vehicle was not found on the person of any one occupant; thus, possession could be attributed to everyone in the vehicle, including petitioner; (2) all searches of the vehicle petitioner was driving were reasonable, lawful, and valid, and the items recovered therefrom were admissible; (3) petitioner was properly given his <u>Miranda</u> warnings, and his voluntary statements regarding his involvement in two robberies were admissible as spontaneous and were not a result of custodial interrogation; and (4) petitioner gave his DNA sample "knowingly and voluntarily and with consent" (H. 1084-86).[1] Even assuming the arguments now raised in the habeas

---

[1] Numbers in parenthesis preceded by "H" refer to hearing minutes.

petition had been raised on direct appeal, the rulings of the hearing court likely would have been upheld by the Appellate Division.

The record demonstrates that petitioner was unable to rebut the presumption in N.Y. Penal Law § 265.15(3) that a gun found in an automobile is in the possession of all occupants of that vehicle. Petitioner insists his appellate counsel should have argued that this statutory presumption does not apply where a weapon is recovered on the person of another occupant of a vehicle, but that is not this case. Indeed, there are no facts in the record for petitioner's appellate counsel to have made such an argument. Instead, the record clearly indicates that when the police officer initially approached the vehicle petitioner was driving, he observed the front passenger stuffing a "silver L shaped object consistent with a firearm" into the space between the seat cushion and the backrest of the front passenger seat of the car (H. 15, 26-27, 71, 95, 238). This is precisely where, minutes later, police recovered a .32 caliber silver firearm (H. 19, 39, 169, 171, 258). Thus, the gun was not found on the person of any single occupant of the car. Indeed, there was no evidence that the gun was ever in the possession of the front passenger. Thus, appellate counsel was not ineffective for failing to raise this meritless argument.

Appellate counsel was also not ineffective for his failure to challenge wholly reasonable police searches of both the trunk of the car and the blue bag found therein. There was unequivocal, uncontroverted police testimony that demonstrates the propriety of each step of each search. First, petitioner was arrested because there was unchallenged testimony that he was driving without a license (H. 16, 34), and because there was probable cause to believe he was in possession of a firearm (H. 15, 26-27,

3

71, 95, 238; Section A, supra). Under New York law, the police may search the entire passenger compartment of a car incident to a lawful arrest such as this. See People v. Thompson, 215 A.D.2d 604, 605 (2d Dep't. 1995) ("search of the passenger compartment of the automobile, which revealed the presence of two loaded handguns, was justified as a search, incident to the occupants' lawful arrest").

Second, when making the lawful search of the passenger compartment of the vehicle, incident to petitioner's lawful arrest, it is undisputed that the police recovered a .32 caliber firearm (H. 19), the wallet of a victim of a robbery that had occurred the day before (H. 19-20, 46-47), and a bloody mallet or sledge hammer. Under New York law, when objects such as these are found in the passenger portion of a vehicle -- that is, objects that give the police "reasonable belief that the vehicle was in some way, associated with [a] crime and that a search of the vehicle would produce the fruits, instrumentalities, contraband or evidence of the crime" -- they give police independent probable cause to search "every part of the vehicle," including the trunk. People v. Jackson, 111 A.D.2d 412, 413 (2d Dep't. 1985) (internal quotations omitted) (emphasis added); see People v. Peterson, 173 A.D.2d 574, 575 (2d Dep't. 1991) (weapons found during pat-down "gave police probable cause to believe that other weapons would be discovered in the car," "including . . . in . . . the trunk."); People v. Brown, 116 A.D.2d 727, 729 (2d Dep't. 1986) (Where police officer observed marijuana in plain view in the passenger compartment of vehicle, he had probable cause to then search a locked suitcase in the vehicle's trunk for "additional contraband and the fruits, instrumentalities, or evidence of the crime in question.").

4

It was of no moment that the police performed the trunk search -- which yielded face masks and bandanas (H. 125, 192-94, 219), gloves, nunchaku, assorted jewelry, clear duct tape, aluminum bats, a sword, and a plastic imitation gun (H. 709, 724, 736-37) -- at the precinct, about thirty minutes after petitioner's arrest. Jackson, 111 A.D.2d at 413 (where police had probable cause to search a vehicle's trunk, "the fact that defendant's car was transported to police headquarters and then searched does not affect the validity of the search"); see People v. Orlando, 56 N.Y.2d 441, 446 (1982) ("The Supreme Court has upheld the warrantless search of a . . . vehicle when there is probable cause . . . even though all of the occupants of the vehicle have been arrested before the search is made. It has also made clear that it is not of constitutional significance whether the vehicle is searched where it was stopped or impounded and searched after removal to the station house.") (internal quotations omitted). These searches were reasonable and constitutional in every respect.

Petitioner wrongly attempted to categorize the police action as an impermissible "inventory search" (see petition at 7), but, even if it had been an inventory search, there was no basis in the record upon which appellate counsel could have argued that the search was unreasonable. The New York Court of Appeals has held that a warrantless inventory search is valid if: "(1) the search, in accordance with the standardized procedure, is designed to produce an inventory and (2) the search results are fully recorded in a usable format." People v. Gomez, 13 N.Y.3d 6, 11 (2009); see also United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002) (inventory searches are "a well-defined exception to the warrant requirement") (internal quotations omitted); People v. Willette, 42 A.D.3d 674, 676 (3d Dept. 2007)("[a] valid inventory search

5

conducted by the police could have included opening and examining closed containers within the vehicle, including the hockey bag in the trunk"). There is simply no indication in the record that these requirements were ignored. Thus, there was no reason for appellate counsel to challenge the searches, then, regardless of how they are characterized.

Appellate counsel also had no basis upon which to challenge the admissibility of spontaneous statements petitioner made about the two robberies. The record is unequivocal: On August 24, 2005, at approximately 4:00 p.m., Officer DiCaprio properly advised petitioner of his Miranda rights (H. 315-17). Petitioner refused to talk at this point, and Officer DiCaprio said nothing more to petitioner that day (H. 339). The next day, petitioner asked to speak with Officer DiCaprio and, when Officer DiCaprio arrived, petitioner asked about the nature of the charges against him (H. 321-22). After Officer DiCaprio explained the charges, petitioner spontaneously replied, "Yeah, mother fucker, two little robberies" and claimed that "My brother was the lookout . . . . My brother didn't do anything" (H. 322-23). Based on the uncontroverted record, spontaneous statements such as these, made while in custody, were admissible under New York law. See People v. Kaye, 25 N.Y.2d 139, 144 (1969) (volunteered or spontaneous statements made by suspects in custody are admissible, even where Miranda warnings have not been given); People v. Robinson, 15 Misc.3d 1129(A) (N.Y. Sup. Ct., Bronx County, 2007) (statement was admissible as spontaneous where it was made while a defendant was handcuffed but was not the result of questioning by officers).

Although petitioner makes much of his alleged deprivation of food, drink, and bathroom facilities for the twelve hours before the spontaneous statements were made,

6

his claim is unsubstantiated by the record and wholly irrelevant to the question of admissibility. Petitioner offers no proof in the hearing record to demonstrate that he was denied access to food, drink or bathroom facilities, and respondent knows of no evidence to support the claim. Under these circumstances, appellate counsel reasonably decided to forgo challenging the admissibility of these statements. Any attempt to raise this argument on appeal would have been futile.

Also unsupported by the record was petitioner's claim that the police forcibly obtained his DNA. At the suppression hearing, police officers offered uncontroverted testimony regarding petitioner's consent to the taking of his DNA (H. 946). As the record is devoid of any support for this claim, or indeed of any indication that appellate counsel was aware of the claim at all, it is difficult to understand how appellate counsel's failure to raise the issue constituted ineffective assistance. In any event, even if appellate counsel had been apprised of petitioner's contention, any attempt to raise this argument on appeal would have been meritless as it would have relied on evidence dehors the record.

Not only has petitioner failed to establish that any of these new claims had merit, but the quality of appellate counsel's work on petitioner's behalf cannot be denied. In a brief that was twenty-six pages long, appellate counsel presented an argument that was replete with references to the hearing transcript and relevant legal citation. Indeed, petitioner conceded in his petition that the facts supporting the probable cause claim made by appellate counsel on direct appeal were "meticulously laid out" (see petition at 7). This gives further credence to the argument that appellate counsel was competent and used sound legal judgment when choosing which claims to address.

7

Petitioner cannot now, with the benefit of hindsight, raise appellate counsel's unsuccessful strategies on appeal to the level of ineffective assistance of counsel. Thus, petitioner's complaints regarding his appellate counsel are patently meritless.

## CONCLUSION

FOR THE REASONS SET FORTH HEREIN, AND THOSE STATED IN RESPONDENT'S AFFIDAVIT AND MEMORANDUM OF LAW DATED JULY 29, 2011, THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED IN ITS ENTIRETY.

Dated: Mineola, New York
       March 25, 2014

                                        Respectfully submitted,

                                        Kathleen M. Rice
                                        *District Attorney, Nassau County*
                                        *Attorney for Respondent*
                                        262 Old Country Road
                                        Mineola, New York 11501
                                        (516) 571-3800

                              By: _____/s/_____
                                        CRISTIN N. CONNELL

Tammy J. Smiley
Cristin N. Connell
  Assistant District Attorneys
    *Of Counsel*
Andre K. Cizmarik
  Assistant District Attorney
  Serving in a Pro Bono Capacity

9

Certificate of Service

I hereby certify that, on March 25, 2014, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon:

        Rasheke Boyd, DIN# 06-A-4090
        Petitioner Pro Se
        Southport Correctional Facility
        P.O. Box 2000
        Pine City, New York 14871-2000

        Kathleen M. Rice
        *District Attorney, Nassau County*
        *Attorney for Respondent*
        262 Old Country Road
        Mineola, New York 11501
        (516) 571-3800

By: _____/s/_____
      CRISTIN N. CONNELL