# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

───────────────────

Nº 11-CV-324 (JFB)

───────────────────

RASHEKE BOYD,

Petitioner,

VERSUS

PATRICK GRIFFIN,

Respondent.

───────────────────

**MEMORANDUM AND ORDER**
May 7, 2014

───────────────────

JOSEPH F. BIANCO, District Judge:

Rasheke Boyd (hereinafter "Boyd" or "petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the Supreme Court, Nassau County, State of New York. On June 14, 2006, petitioner pleaded guilty to two counts of attempted murder in the second degree, N.Y. Penal Law § 125.5(1); four counts of robbery in the first degree, *id.* § 160.15(2); one count of attempted robbery in the first degree, *id.* § 160.5(2); two counts of assault in the first degree, *id.* § 120.10(1); and one count of assault in the second degree, *id.* § 120.05(2). Petitioner was sentenced to two determinate terms of twenty years, with five years of post-release supervision, with respect to the four counts of robbery in the first degree, the two counts of attempted murder in the second degree, and the two counts of assault in the first degree. He was sentenced to fifteen years' incarceration on the attempted robbery in the first degree count, and seven years on the assault in the second degree count, both with three years of post-release supervision. Petitioner was ordered to pay restitution in the amount of $12,486.73, and orders of protection were issued for seven victims of the attempted murders, robberies, and assaults.

In the instant petition, petitioner challenges his conviction, claiming that his constitutional rights were violated because (1) the police did not have probable cause to stop his vehicle, and the trial court's failure to make such a determination resulted in a violation of his due process rights under the United States and New York Constitutions; (2) he received ineffective assistance of trial counsel; and (3) he received ineffective assistance of appellate counsel. For the reasons discussed below, the Court denies the petition for a writ of habeas corpus.

## I. BACKGROUND

### A. Factual Background

The Court has adduced the following facts from the petition and documents

attached thereto, as well as from the state court's trial and appellate record.[1]

At approximately 3:00 a.m. on May 14, 2005, petitioner and two men, wearing masks and wielding handguns, entered the Publick House Pub in Rockville Centre, New York, and ordered everyone to the floor. (H. 429, 451.) One of the assailants shot a patron as the patron fled, and then shot another patron as that patron was lying on the floor.[2] (H. 429.) Before fleeing, the assailants had the bartender give them money from the cash register and demanded money and phones from patrons.[3] (H. 429.) Officers called to the scene recovered spent bullets from a small caliber handgun and a mask around the corner from the Pub. (H. 458–60.)

Approximately four months later, shortly before midnight on August 23, 2005, officers were called to the scene of a violent robbery at the Corner Pub in West Hempstead, New York. (H. 685.) Officers later learned from witnesses and victims that three black men, including petitioner, entered the Corner Pub wearing masks or bandanas over their faces and carrying handguns.[4] (H. 686.) Petitioner waved a silver handgun and demanded that everybody get on the floor.[5] (H. 686.) He then jumped over the counter, leaned down to where the bartender was, and demanded the location of the bar's safe and phone. (H. 687.) Petitioner took the money from the safe and the portable phone off the headset, and then jumped back over the bar. (H. 687.) At the same time, the other two assailants, with a second handgun, demanded wallets and jewelry from the victims, Arthur Maloney, Joseph Cartolano, and David Bedell. (H. 686–87.)

The first victim, Cartolano, surrendered his wallet, and petitioner then beat him over the head and broke his finger.[6] (H. 687.) The second victim, Maloney, a retired New York City Police Officer, witnessed the attack on Cartolano. (H. 688.) When the assailants demanded his wallet, Maloney feared for his life because his wallet contained his police identification, and Maloney refused to hand it over. (H. 688.) Instead, he grabbed one of the assailants, but then another assailant repeatedly pummeled Maloney with a sledgehammer. (H. 688.) Petitioner and his co-assailants fled the scene. (H. 15.)

On August 24, 2005, at approximately 1:25 a.m., four New York City Police Officers—Laren, Zepherin, Schettini, and Wagner—were patrolling the 77th precinct in Brooklyn, New York, in an unmarked police vehicle. (H. 14–15.) The officers

---

[1] The following facts were taken from the pre-trial hearing transcripts ("H."), the pleading minutes ("P.") and the sentencing minutes ("S."). At the pre-trial hearing, New York City Police Officer Dennis Laren; Nassau County Detectives Anthony Dicaprio, Mark Garry, Kristina Napolitano, Michael Kearns, and Brian Bunster; and Nassau County Police Officer Martin Helmke all testified. Petitioner also made a statement at the plea hearing.

[2] Petitioner admitted that he shot two people in the Publick House Pub and that he intended to cause death. (P. 12.)

[3] Petitioner admitted that he aided and abetted the forcible stealing of property from a victim, and that he forcibly stole property from another victim while displaying a loaded gun. (P. 10–12.)

[4] Detective Napolitano testified that she was working on August 24, 2005, and that shortly before midnight she heard a radio call that described a violent robbery with sledge hammers and injured victims, and she called ambulances. (H. 684–85.) Upon arriving at the Pub, Napolitano observed blood on the floor and a cell phone with blood on it. (H. 685.)

[5] Two others entered the Corner Pub wielding sledgehammers and a second gun. (H. 711.)

[6] Petitioner admitted he forcibly took Cartolano's property while wielding a loaded handgun, and pistol-whipped Catalano over the head. (P. 17.)

were traveling southbound on Utica Avenue. (H. 59.) As their vehicle was stopped at a red light at the intersection of Utica Avenue and Prospect Street, they observed a black Toyota approaching from the opposite direction on Utica Avenue. (H. 21, 59.) The Toyota ran the red light at the Prospect Street intersection. (H. 15.)

Sergeant Zepherin, the driver of the police car, made a U-turn and pulled the Toyota over. (H. 22.) The stop was made approximately fifteen seconds after the officers observed the Toyota run through the red light. (H. 22.) The Toyota pulled over against the sidewalk, and the police car came to a stop a few feet behind it. (H. 23, 64.) There were street lights in the area, but the testifying officer could not recall whether the lights inside the Toyota were on. (H. 23.) Officer Laren used a flashlight to see better. (H. 93.)

Officers Laren and Wagner approached the vehicle. Officer Laren saw the individual in the front passenger seat place an "L shaped silver object into the seat cushion consistent with a firearm." (H. 15.) Laren saw the object through an angle of the rear window, as he was walking up alongside the driver's side. (H. 27.) He alerted his partner, Officer Wagner, to what he had seen, and then requested that the driver provide his driver's license. (H. 16.)[11]

After the driver failed to provide a driver's license, the passengers were taken out of the vehicle. (H. 16.) Officer Wagner then recovered a .32 caliber silver firearm from in between the front passenger seat cushions. (H. 19.) Officer Wagner also recovered Cartalano's wallet from underneath the rear seat cushion and a bloody mallet from the rear passenger side floor board. (H. 20, 46). At no time during the stop did any of the officers draw their guns, because they were not concerned for their safety. (H. 30, 48.)

The four men were arrested and taken to the precinct, along with their vehicle. (H. 48, 51.) Officers then searched the vehicle. (H. 51.) During the search, officers recovered a cordless phone, a duffle bag containing masks and bandanas, nunchakus, assorted jewelry, and clear duct tape. (H. 192–94, 709.) The police also uncovered a license plate, bats, and a plastic imitation gun from the trunk. (H. 724.) After the inventory search was completed, the Brooklyn Robbery Unit was contacted, and upon learning that Cartalano's wallet was found in the vehicle, the Robbery Unit contacted authorities in Nassau County. (H. 328, 330, 505.) The Nassau County Police concluded that the physical evidence and the arrestees were consistent with the modus operandi of the May 14th shooting, and they sent detectives to the Brooklyn precinct to investigate. (H. 328, 428, 505, 583–86.)

Two of the arrestees, Brown and Burvick, gave interviews and written confessions implicating all four arrestees in both robberies. (H. 383–84, 444–45, 532–35, 606, 863–64.) They identified petitioner as the assailant who shot the two victims during the Publick House robbery. (H. 557.) Detectives then met with petitioner, explained that they were investigating the robbery and shooting, and advised him of his Miranda rights. (H. 339-42.) Petitioner did not make a statement. (H. 320, 343.) However, based on the physical evidence recovered from the vehicle and the statements given by his fellow arrestees, petitioner was placed under arrest for the two robberies. (H. 346, 352, 357.)

---

[11] Officer Laren testified that petitioner was driving the vehicle, Shameke Boyd was the front passenger, and Jamel Brown and Roy Burvick were traveling in the back seat of the vehicle. (H. 16–18.)

The next day, when petitioner was being transferred to Nassau County, petitioner attempted to wiggle out of his handcuffs. (H. 638.) In addition, while petitioner was being transferred, a call came over the radio concerning a Black male with a gun in Uniondale. (H. 639.) Petitioner laughed and stated, "[H]ey, that sounds like me." (H. 639.) Finally, when petitioner arrived in Nassau County, the officers recovered a six to eight inch shank under the sole of petitioner's sneaker. (H. 640.)

Later that day, petitioner asked to speak with detectives and demanded to know what the case was about. (H. 322.) Detective Anthony DiCaprio explained the charges against him, including the robbery and attempted murder. (H. 322.) Petitioner then stated, "Yea mother fucker, two little robberies," but then asked, "No one got killed right?" (H. 322-23, 360-62.) Finally, when the detective began to leave, petitioner blurted out that his brother was the "lookout" and that he did not do anything. (H. 323, 363–64.)

B. Procedural History

1. Trial Court Proceedings

a. *Huntley/Mapp* Suppression Hearing

Petitioner was charged in November 2005 under Nassau County Indictment No. 2495N/05. A suppression hearing was held from March 9 to March 29, 2006, to determine whether the weapon recovered from the vehicle, the contents of the bag located within the vehicle's trunk, and the statements petitioner made to the Nassau County police officers were admissible. At the hearing, petitioner's attorney first conceded that the traffic stop was lawful. (H. 1019.) However, he argued that the police did not have a basis to arrest petitioner after the traffic stop because a co-defendant, Shameke Boyd, was in sole possession and control of the loaded weapon that led to the four arrests. (H. 1019–20.)

At the close of the hearing, the court issued its findings and conclusions. (H. 1084–87.) It found that "[o]n August 24, 2005, at approximately 1:25 a.m., the defendants were pulled over for having proceeded through a red light in Brooklyn on Utica Avenue. That stop was lawful in all respects." (*Id.* at 1084–85.) The court also determined that the search of the vehicle was lawful because a police officer observed what could have been a weapon being secretly positioned in the vehicle, and after all defendants were outside of the car, the officer determined that it was a loaded weapon. (H. 1085.) The further searches of the car also were valid. (H. 1085.) Thus, the court concluded that the arrests and the searches were made pursuant to probable cause, and, therefore, the evidence recovered from the vehicle was admissible for the People's case. (H. 1085.)

In addition, the court held that petitioner, Burvick, and Brown were properly given their *Miranda* warnings and validly waived the rights pursuant thereto. (H. 1085.) The court also found that certain statements made by petitioner were admissible because he received his *Miranda* warnings and validly waived the rights pursuant thereto. (H. 1086.)[7] Lastly, the court held that the written statements made by Burvick and Brown were admissible because they voluntarily, knowingly, and freely gave those statements after receiving their *Miranda* rights. (H. 1086.)

---

[7] One statement that was made by petitioner, "All right, it was me," was ruled inadmissible because "there was no testimony regarding same." (H. 1086.) The court reasoned that the other statements were "spontaneously made and not as a result of custodial interrogation." (*Id.*)

### b. The Plea Proceeding

Before trial and while the jury was being selected, petitioner withdrew his previously entered plea of not guilty and entered a plea of guilty on all charges. (P. 2.) He pleaded guilty to four counts of robbery in the first degree, one count of attempted murder in the second degree, one count of attempted murder in the first degree, two counts of assault in the first degree, one count of attempted robbery in the first degree, and one count of assault in the second degree. (P. 7–8.) In exchange, it was agreed that petitioner would be sentenced to no more than twenty years' imprisonment concurrently, with five years of post-release supervision. (P. 8.)

During the proceeding, petitioner admitted that he was in the Publick House Bar with the co-defendants on May 14, 2005, that he was carrying a loaded handgun, that he stole money and property from the bar and its patrons, and that when he shot his gun he intended to cause death or serious physical injury. (P. 10–14.) Petitioner also admitted that he was in the Corner Pub on August 24, 2005, that he stole the personal property of several patrons and the bartender by threatening them with a loaded handgun, and that he pistol-whipped one of the victims. (P. 14–19.) The court accepted the plea. (P. 19.)

### c. Sentencing

Petitioner appeared before the Supreme Court, County of Nassau, for sentencing on June 14, 2006. Before the court issued its sentence, petitioner stated:

> I feel that Mr. Braverman [petitioner's attorney] hasn't represented me correctly. The plea that I took a couple of weeks ago, I would like to take it back. He informed me that he wasn't going to win the case for me. That's the reason why I copped out that plea, and I do want to go forward to trial. (S. 2.)

This application was denied in all respects. (S. 2)

With respect to attempted robbery in the first degree, the court sentenced petitioner to a determinate term of incarceration of fifteen years. (S. 6.) With respect to assault in the second degree, the court sentenced petitioner to a determinate term of incarceration of seven years. (S. 6.) For all other crimes, the court sentenced petitioner to a determinate term of incarceration of twenty years, with five years of post-release supervision. (S. 6.) Each term was to run concurrently. (S. 7.) The court also imposed a restitution fee of $12,486.73, and issued seven orders of protection for the victims of the incidents. (S. 7.)

### 2. Petitioner's State Court Appeals

Petitioner, represented by Joseph Kilada, appealed his conviction and sentence to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, on the grounds that (1) the police did not have probable cause to stop the vehicle petitioner was traveling in, and (2) the trial court's failure to make that determination resulted in a violation of petitioner's due process rights under the New York State and United States Constitutions. In a decision dated December 8, 2009, the Appellate Division affirmed petitioner's conviction and sentence. *See People v. Boyd*, 889 N.Y.S.2d 490 (N.Y. App. Div. 2009). The court concluded that the contention that the police did not have probable cause to stop the car was unpreserved for appellate review because petitioner did not raise the claim at the

suppression hearing. *Id.* at 490. The court further noted that, even if the issue were preserved, the stop of petitioner's vehicle was lawful because "[t]he police officer's testimony established that he had probable cause to stop the defendant after he observed the defendant driving through a red light." *Id.* (citation omitted).

On January 26, 2010, petitioner applied for leave to appeal to the New York State Court of Appeals.[8] Petitioner claimed that his lawyer's "extreme incompetence" was completely ignored by the trial court. On April 19, 2010, the Court of Appeals denied the application. *See People v. Boyd*, 14 N.Y.3d 838 (2010).

Petitioner filed the instant petition on January 18, 2011. On May 7, 2012, this Court granted petitioner's request to exhaust his ineffective assistance of counsel claim in state court, and held the petition in abeyance. (Exhaustion Order, Docket No. 12.) On June 4, 2012, petitioner filed his motion for a writ of error coram nobis with the Appellate Division. Respondent opposed, and the Appellate Division denied the motion on October 10, 2012. *People v. Boyd*, 951 N.Y.S.2d 889 (N.Y. App. Div. 2012). The Appellate Division found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *Id.* On March 11, 2013, the New York State Court of Appeals denied petitioner leave to appeal. *People v. Boyd*, 20 N.Y.3d 1096 (2013). Thus, because petitioner raised his claim for ineffective assistance of appellate counsel in his application for a writ of error coram nobis, petitioner has exhausted that claim.

---

[8] This letter was incorrectly dated, as it was received by the Court of Appeals on January 21, 2010.

C. The Instant Petition

Petitioner filed the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 18, 2011. Respondent opposed on July 29, 2011. Petitioner replied on August 18, 2011. By letter dated December 9, 2013, petitioner informed the Court that he had exhausted the ineffective assistance of appellate counsel issue in state court, and he submitted the state court record on January 23, 2014. Respondent filed a supplemental opposition addressing that claim on March 25, 2014. Petitioner filed a supplemental reply on April 3, 2014. The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Additionally, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact . . . are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on three grounds: (1) the police did not have probable cause to stop his vehicle, and the trial court's failure to make such a determination resulted in a violation of his due process rights under the United States and New York Constitutions; (2) he received ineffective assistance of trial counsel; and (3) he received ineffective assistance of appellate counsel. Respondent argues that several of petitioner's claims of are procedurally barred from review, and that they otherwise are meritless. For the following reasons, the Court concludes that petitioner is not entitled to habeas relief and dismisses the instant petition.

A. Procedural Analysis

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust her claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), a petitioner must fairly present her federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in

order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original) (internal quotation marks omitted).

Generally, to establish exhaustion, passage through the state courts, in and of itself, is insufficient. *See Picard*, 404 U.S. at 275. To provide the State with the necessary "opportunity," the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365–66. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)) (internal quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191; *see also United States ex rel. Rogers v. LaVallee*, 463 F.2d 185, 187 (2d Cir. 1972). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192.

2. State Procedural Requirements

Similar to a failure to exhaust a claim, a habeas petitioner's failure to satisfy a state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted).

Even where a petitioner properly exhausts a claim, however, exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744–51)). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 162.

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect accorded to state judgments. *See House v. Bell*, 547 U.S. 518, 536 (2006). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's right to

enforce its laws while maintaining its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730–31.

A petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See id.* at 729–33. To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261–62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). However, there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002). Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (quotation marks omitted).

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if the petitioner can demonstrate that the failure to consider the claim will result in a miscarriage of justice. 501 U.S. at 750. A miscarriage of justice occurs in extraordinary cases, such as a constitutional violation resulting in the conviction of an innocent individual. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

B. Application

1. Lack of Probable Cause

a. Procedural Bar

Petitioner's lack of probable cause claim is procedurally barred because a state court relied on a firmly established procedural rule to deny this claim.[9] The Appellate Division denied petitioner's claim that the police did not have probable cause to stop his vehicle, ruling that the claim was unpreserved for appellate review because petitioner failed to raise the issue at the suppression hearing. *Boyd*, 889 N.Y.S.2d at 490. A statement that a petitioner's claim was "unpreserved" is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue. *See, e.g.*, *Figueroa v. Grenier*, No. 02-cv-5444 DAB GWG, 2005 WL 249001, at *8 (S.D.N.Y. Feb. 2, 2005). This is true even though the Appellate Division held, in the alternative, that petitioner's claim failed on the merits because the officers had probable cause. *E.g.*, *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."); *see also Garvey v. Duncan*, 485 F.3d 709, 715–16 (2d Cir. 2007); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground

---

[9] The Court also concludes, as discussed more fully *infra*, that petitioner's guilty plea, which the Court finds valid, forfeited petitioner's right to argue issues collateral to the guilty plea, including whether the vehicle search violated the Fourth Amendment. *See Burvick v. Brown*, No. 10-CV-5597 (JFB), 2013 WL 3441176, at *7 (E.D.N.Y. July 9, 2013).

9

precluding federal habeas review and further noting that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim" (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990))).

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has not met this burden. He has demonstrated neither "cause [n]or prejudice" for his procedural default, nor shown that failure to consider the claim will result in a miscarriage of justice. Accordingly, petitioner's lack of probable cause claim is procedurally barred.

b. Merits Analysis

In an abundance of caution, the Court concludes that, even assuming *arguendo* that petitioner's claim is not procedurally barred, it would not warrant habeas relief on the merits. As noted above, petitioner argues that the police officers did not have probable cause to stop his vehicle, and so the trial court's failure to make such a determination violated petitioner's due process rights. (Pet. at 1.) The Court disagrees. As set forth below, the Court cannot grant relief on this ground because petitioner had a full and fair opportunity to litigate this Fourth Amendment claim in state court. In any event, even if the Court could review the underlying merits of this Fourth Amendment claim, petitioner's claim fails because he has not demonstrated that the state court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence in the record.

It is well-settled that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Second Circuit has further explained that, under *Powell*, "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Courts have described such a breakdown as occurring when the state court "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *Id.* at 71 (citation and internal quotation marks omitted).

Petitioner has had a full and fair opportunity to litigate this claim in state court. It is clear that New York has adequate corrective procedures for litigating Fourth Amendment claims, which are set forth in N.Y. C.P.L. § 710.10 *et seq. See*, *e.g.*, *Capellan*, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989))); *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983) (New York's procedure for litigating a Fourth Amendment claim in

10

a criminal trial complied with requirement that state provide an opportunity to litigate such claims); *see also Blagrove v. Mantello*, 104 F.3d 350, 350 (2d Cir. 1996) (where defendant's "Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in [his] pro se brief," defendant's "Fourth Amendment argument is barred [from federal habeas review] because the issue was fully and fairly litigated in the state courts.").

It is also clear that there was no unconscionable breakdown in the underlying process. The trial court conducted a pre-trial evidentiary hearing on the motion to suppress. After the hearing, petitioner's counsel conceded that the police had probable cause to stop petitioner's vehicle, and moved to suppress evidence on other grounds related to the search. Petitioner also raised his Fourth Amendment claims on appeal to the Appellate Division, which found the claim unpreserved and also affirmed the lower court on the merits. Thus, the record reveals no "'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown." *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). Instead, the record clearly shows that the state court conducted a reasoned and thorough method of inquiry into the relevant facts, and that the Appellate Division, on review of petitioner's claims, affirmed the lower court's determination. In short, having fully availed himself of New York's corrective procedures regarding his Fourth Amendment claim, petitioner has had an opportunity for full and fair litigation of the claim and may not raise it on federal habeas review. *See, e.g.*, *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991) (noting that under *Stone v. Powell*, "federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim"); *see also Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir. 1986) (stating that a federal habeas corpus court may not consider a Fourth Amendment claim if the state already has provided a full and fair opportunity for litigation of the same); *Garcia v. Artus*, No. 08-CV-1423 (JFB), 2010 WL 1816333, at *5–6 (E.D.N.Y. May 5, 2010); *Garrett v. Smith*, No. 05-cv-3374(JFB), 2006 WL 2265094, at *8 (E.D.N.Y. Aug. 8, 2006).

Even assuming the Court could review the underlying merits of this claim, the claim fails on the merits.

During the *Huntley/Mapp* hearing at which petitioner conceded that the stop was lawful, the trial judge determined that the search complied with the Fourth Amendment in all aspects. The Appellate Division rejected petitioner's argument on the merits, in addition to finding it procedurally barred. Therefore, AEDPA deference applies. *See Roberts v. Pyant*, No. 05 Civ. 3110(RJH)(DF), 2009 WL 6412017, at *12 n.16 (S.D.N.Y. Dec. 3, 2009) ("The Appellate Division also held that the issue that Petitioner sought to raise . . . was forfeited by Petitioner's guilty plea . . . . This does not detract from the fact that the Court reached the merits of the claim, such that its decision is entitled to AEDPA deference." (citation omitted)); *Dozier v. Phillips*, No. 03 Civ. 3298(RJS)(HBP), 2009 WL 3030299, at *4 (S.D.N.Y. Sept. 21, 2009) ("Here, Petitioner's claim was adjudicated on the merits in state court, albeit as an alternative holding, and AEDPA deference therefore applies."). Based upon the facts presented at the hearing, the Court finds that the state court had more than sufficient basis to find

that there was probable cause for police to stop petitioner's car. There is uncontroverted testimony that petitioner ran a red light and committed a traffic violation: Officer Laren testified that he and the other officers in his patrol car observed the petitioner's vehicle stop at the red light. (H. 15.) Petitioner's attorney even conceded that petitioner failed to stop at the red light during the suppression hearing. (H. 1019.) Thus, though counsel challenged other aspects of the search, the trial judge found that the search complied with the Fourth Amendment. There is nothing in the record to indicate that the judge's ruling or the Appellate Division's conclusion that the police had probable cause to stop petitioner's vehicle was contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing. As the Supreme Court has stated, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Wren v. United States*, 517 U.S. 806, 810 (1996).

Accordingly, the Court concludes that the claim is without merit, and denies habeas relief on this ground.

2. Ineffective Assistance of Trial Counsel

a. Procedural Default

Petitioner's claim for ineffective assistance of trial counsel is procedurally defaulted. At sentencing, petitioner stated that he did not feel that his attorney represented him competently and requested to withdraw his plea. Petitioner stated, "The plea that I took a couple of weeks ago, I would like to take back. [Trial counsel] informed me that he wasn't going to win the case for me. That's the reason why I copped out that plea, and I do want to go forward to trial." (S. 2.) The sentencing court denied this application in all respects based on the plea minutes. (S. 2.) Petitioner failed to raise this claim on direct appeal to the Appellate Division. The only argument he pursued on appeal was that the police did not have probable cause to stop his vehicle and that the hearing court's failure to make such a decision violated his due process rights. Thus, because petitioner did not raise this argument on direct appeal or through a motion under C.P.L. § 440.10 (to address issues outside the record), the claim is procedurally barred from federal habeas review. *See, e.g.*, *Ramos v. Superintendent, Sing Sing Corr. Facility*, No. 11–CV–4929 (VB), 2014 WL 243148, at *5 (S.D.N.Y. Jan. 22, 2014) (claim was properly exhausted where, even though petitioner did not exhaust claim on direct appeal, he raised it in C.P.L. § 440 motion, the state court denied the claim on the merits, and petitioner sought leave to appeal from the Appellate Division); *Anthoulis v. New York*, No. 11–CV–1908 (BMC), 2012 W L 194978, at * 3 (E.D.N.Y. Jan. 23, 2012) ("[T]o properly exhaust an ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record, petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division."); *Rosales v. Artus*, No. 10-CV-2742 (JFB), 2011 WL 3845906, at *5 (E.D.N.Y. Aug. 30, 2011) (concluding that petitioner's claims regarding ineffective assistance of counsel and invalidity of plea were procedurally barred from habeas review because petitioner failed to seek leave to appeal within thirty days). Petitioner also has not shown cause for his procedural default, nor prejudice or a miscarriage of justice resulting therefrom. *See Coleman*, 501 U.S. at 750.

### b. Merits Analysis

Although the Court finds that the claim is procedurally barred, the Court nonetheless has considered the merits. Petitioner argues that trial counsel failed to protect his rights to a knowing and intelligent plea when he failed to discuss with petitioner any viable defense or lack thereof. As set forth below, the Court concludes that petitioner received effective assistance of trial counsel, and his claim is patently without merit.

### i. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)) (internal quotation marks omitted). In assessing performance, a court must apply a "'heavy measure of deference to counsel's judgments.'" *Id.* at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690–91).

The second prong focuses on prejudice. The petitioner is required to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors are of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). Additionally, it is important to note that "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v.*

*Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the ineffective assistance claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

ii. Application

Petitioner fails to satisfy the first prong of *Strickland*.

As a threshold matter, to the extent petitioner challenges issues that do not relate to the voluntariness of his guilty plea but, rather, antecedent constitutional violations, federal habeas relief is precluded. A petitioner who pleads guilty forfeits the right to argue issues collateral to the guilty plea. "State law treats a guilty plea as 'a break in the chain of events [that] preceded it in the criminal process.' " *Haring v. Prosise*, 462 U.S. 306, 321 (1983) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Therefore, a plea of guilty "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). In other words, once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. Therefore, "'[t]he only proper focus of a federal habeas inquiry in such a situation is the voluntary and intelligent character of the guilty plea,'" *Amparo v. Henderson*, No. CV 86–4310, 1989 WL 126831, at *2 (E.D.N.Y. Oct. 18, 1989) (quoting *Isaraphanich v. United States*, 632 F. Supp. 1531, 1533 (S.D.N.Y. 1986)), because a petitioner's claims regarding constitutional violations that occurred before the plea can only be successful if the petitioner establishes that they might have affected the voluntariness of the plea, *see id.* These alleged prior constitutional violations may play a part in evaluating whether a guilty plea "'represent[ed] a voluntary and intelligent choice among the alternative courses of action'" open to a petitioner. *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Accordingly, petitioner has waived his right to challenge aspects of counsel's performance that are unrelated to the guilty plea, including, as noted *supra*, his Fourth Amendment claim.

However, because petitioner challenges counsel's performance with respect to his entry of the guilty plea, the Court further analyzes this claim. *See Burvick*, 2013 WL 3441176, at *7 n.5 ("If the plea was 'entered upon the advice of counsel,' the Court must also determine whether the advice constituted ineffective assistance of counsel." (citation omitted)). Citing the Supreme Court's well-established standard for ineffective assistance of counsel as set out in *Strickland*, the Second Circuit has stated that to demonstrate ineffective assistance of counsel in the context of a guilty plea, "a petitioner must demonstrate that counsel's representation [ ] fell below an objective standard of reasonableness," and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Munson v. Rock*, 507 F. App'x 53, 56 (2d Cir. 2013).

It was not objectively unreasonable for

petitioner's trial counsel to advise petitioner to plead guilty to two counts of attempted murder in the second degree, four counts of robbery in the first degree, one count of attempted robbery in the first degree, two counts of assault in the first degree, and one count of assault in the second degree. A review of the suppression hearing record and the plea and sentencing record shows that petitioner's plea was voluntary, and his trial attorney was not ineffective for advising petitioner to accept the plea.

Trial counsel advocated for his client during the suppression and sentencing hearings. First, counsel strongly advocated for petitioner's rights in that he moved to suppress and vigorously cross-examined the witnesses against petitioner during the hearing. (H. 20–72, 323–67, 629–32, 641–80, 710–51, 949–64.) Second, trial counsel objected at various points during the hearing. (H. 316, 319, 322.) Third, even after petitioner attempted to retract his guilty plea during sentencing by claiming that trial counsel did not "represent[] [him] correctly," counsel continued to protect petitioner's rights and continued to represent him in an effective manner. For instance, counsel objected to the admission of the victim impact statement on the grounds that they were not given notice of the victim impact, and the gentleman present at the hearing was not one of the victims of the robbery. (S. 3–4.) In addition, petitioner responded in the affirmative when he was asked at the guilty plea hearing if he "had enough time to speak with [his] attorney before pleading guilty . . . [.]" (P. 4.) He also answered in the affirmative to the question of whether he was "satisfied with the manner in which [his] attorney has represented [him.]"[10] (P. 4.) This record supports the conclusion that counsel clearly considered the potential defenses that could be raised at trial, and, more importantly, that the plea was knowingly, intelligently, and voluntarily made.

Although petitioner's failure to show deficient performance disposes of his claim, the Court also finds that, even assuming *arguendo* that trial counsel's performance was deficient, any alleged deficiencies in that performance did not prejudice petitioner. In light of Boyd's statements implicating himself in the crimes, the co-defendants' statements implicating petitioner in the crimes, and the overwhelming physical evidence of Boyd's participation in the crimes, petitioner cannot demonstrate that, but for his counsel's alleged deficiencies in recommending a plea, there is a reasonable probability that if petitioner's trial counsel had not counseled that petitioner take the plea, that petitioner would not have pleaded guilty and would have insisted on going to trial. Petitioner proffers no evidence in the record or otherwise explaining why his assessment of his counsel's performance changed between the plea hearing and sentencing. Further, the trial court extensively questioned petitioner regarding his waiver of his right to trial.

Therefore, the Court concludes that petitioner did not receive constitutionally deficient assistance of trial counsel in any way. Accordingly, the Court denies petitioner's request for habeas relief on the grounds of ineffective assistance of trial counsel.

### 3. Ineffective Assistance of Appellate Counsel

#### a. Legal Standard

With respect to claims of ineffective assistance of appellate counsel, a criminal defendant has the right to the effective

---

[10] During the plea hearing, the court extensively questioned petitioner to determine whether voluntarily and knowingly was giving up his right to trial by jury. (*See* P. 4–7.)

assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395–96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland* for analyzing such claims as to trial counsel. *See, e.g.*, *Mayo*, 13 F.3d at 533 (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). As noted *supra*, under the Strickland standard, a petitioner alleging ineffective assistance of appellate counsel must prove both: (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001); *Mayo*, 13 F.3d at 533–34.

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751–52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001).

b. Application

Petitioner alleges that his appellate counsel "meticulously laid out the facts supporting" the claim raised on appeal, but lists five claims that his appellate counsel failed to raise. (Pet. 7.) Those claims are:

1. The court abused its discretion in concluding that I had sole control and dominion of the gun recovered;

2. The police failed to obtain a warrant to search the trunk of the Toyota and the blue bag recovered from within the trunk of the Toyota;

3. The court abused its discretion in not suppressing evidence retrieved under the guise of an "inventory search," when the police failed in every respect to follow their own procedures;

4. The court abused its discretion in not suppressing statements I made under duress, after some 18 hours of being handcuffed to the same wall in an interrogation room, and not given anything to eat or drink, or allowed to go to the bathroom; and

5. The court abused its discretion in finding that the taking of my DNA without a proper warrant was lawful and that I gave my DNA knowingly and voluntarily.

(*Id.*)

In attempting to meet the first prong of *Strickland*, petitioner must do more than show that his appellate counsel "omitted a non-frivolous argument." *Mayo*, 13 F.3d at 533 (citing *Jones*, 462 U.S. at 754). Instead, petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* As set forth below, the Court concludes, as a threshold matter, that petitioner's guilty plea bars review of these issues. Regardless, petitioner has not demonstrated that these arguments clearly were stronger than the argument presented. Federal courts should

not "second-guess reasonable professional judgments" by appellate attorneys as to what are the most promising issues for appellate review. *Jones*, 463 U.S. at 754. Accordingly, the Court concludes that the ineffective assistance of appellate counsel claim for habeas relief is meritless.

Petitioner pleaded guilty, and the issues he now raises are irrelevant in determining whether he gave his plea knowingly, voluntarily, and intelligently. Thus, appellate counsel's failure to raise these issues on appeal could not have prejudiced petitioner and is unreviewable. *See, e.g.*, *Tollett*, 411 U.S. at 267 (explaining that once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

With respect to the merits, first, the trial court correctly found that the gun recovered from the vehicle was not found on the person of any particular occupant, and, therefore, possession could be attributed to everyone in the vehicle, including petitioner. Under New York law, "[t]he presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such vehicle at the time such weapon . . . is found, except . . . if such weapon . . . is found upon the person of one of the occupants therein." N.Y. Penal Law § 265.15(3)(a). As set forth *supra*, Officer Laren testified that, as he initially approached the vehicle, he observed the front passenger stuffing a "silver L shaped object consistent with a firearm" into the space between the seat cushion and the backrest of the front passenger seat of the car—precisely where the police later found a .32 caliber firearm. (H. 15, 19, 26–27, 39, 71, 95, 169, 171, 238, 256.) Thus, the trial judge determined that Officer Laren saw an object resembling a weapon "being secreted from a position, not on the person of one of the defendants, into a position within the body of the interior of the car." (H. 1085.) Therefore, because the gun was not found on the person of any single occupant of the car, possession could be attributed to petitioner. *See, e.g.*, *People v. Velez*, 100 473 N.Y.S.2d 556, 556 (N.Y. App. Div. 1984) (driver of van could be presumed to be in possession of firearm where police observed unidentified back-seat passenger throw the firearm outside). Accordingly, an appeal of this issue would have been unsuccessful.

Petitioner's second and third claims— that the police failed to obtain a warrant to search the trunk of the Toyota and that the court abused its discretion in not suppressing evidence retrieved under the guise of an "inventory search," when the police failed in every respect to follow their own procedures—also are meritless. Petitioner was arrested because he drove without a license and there was probable cause to believe he possessed a firearm. With respect to items recovered from the passenger compartment contemporaneous to that arrest—the firearm, a bloody mallet or sledge hammer, and the wallet of a victim of a robbery that occurred the day before— such a search was lawful as a search incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (holding that police may search a vehicle incident to the recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search); *People v. Thompson*, 627 N.Y.S.2d 697, 697 (N.Y. App. Div. 1995) ("The subsequent search of the passenger compartment of the automobile [after the officers removed the defendants from the vehicle], which revealed the presence of two loaded handguns, was justified as a search incident to the occupants' lawful

arrest."). Moreover, because these objects gave the police "a reasonable belief that the vehicle was, in some way, associated with [a] crime and that a search of the vehicle would produce the fruits, instrumentalities, contraband, or evidence of the crime," these objects also gave the police independent probable cause to search every part of the vehicle, including the trunk. *People v. Jackson*, 489 N.Y.S.2d 375, 375 (N.Y. App. Div. 1985) (citation and internal quotation marks omitted); *see also United States v. Thompson*, 545 F. App'x 167, 170 (3d Cir. 2013) ("The automobile exception permits police to search and seize a vehicle so long as they have probable cause to believe that the vehicle contains contraband or evidence of a crime." (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996))). The fact that the car was transported to the precinct and the trunk was then searched does not affect the validity of the search. *Thompson*, 545 F. App'x at 171 ("Since *Chambers v. Maroney*, the Supreme Court has repeatedly held that the automobile exception does not evaporate once the vehicle has been taken away from the place of the initial stop to the police station." (citation omitted)); *see also California v. Acevedo*, 500 U.S. 565, 570 (1991) ("Following *Chambers*, if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle"); *Jackson*, 489 N.Y.S.2d at 375 (citing *United States v. Johns*, 469 U.S. 478 (1985)) (same). Accordingly, there was no reason for appellate counsel to challenge these searches, nor any likelihood that an appeal would have been successful.[11]

Petitioner's fourth claim—that the trial court erred in not suppressing statements petitioner made under duress, after some 18 hours of being handcuffed to the same wall in an interrogation room, and not given anything to eat or drink, or allowed to go to the bathroom—also fails. First, there is no evidence in the record regarding any deprivation of food, drink, or bathroom facilities for the hours before the spontaneous statements were made. Thus, appellate counsel could not have addressed a related trial court error on appeal. Second, the record indicates that Officer DiCaprio properly advised petitioner of his *Miranda* rights and that, the next day, after DiCaprio explained the charges against petitioner, petitioner spontaneously replied, "Yeah mother fucker, two little robberies," and claimed that "My brother was the lookout. . . . My brother didn't do anything." (H. 322–23.) Thus, because the statements were spontaneously made (and even if the *Miranda* warning were not given), they are admissible. *E.g.*, *People v. Kaye*, 25 N.Y.S.2d 139, 144 (1969) (holding that volunteered or spontaneous statements made by suspects in custody are admissible even absent *Miranda* warnings); *see also Miranda v. Arizona*, 384 U.S. 436, 478 (1966) ("Volunteered statements of any

---

[11] Petitioner categorizes the police action as an impermissible "inventory search" that did not adhere to police procedures. (Pet. at 7.) Even if the search of the trunk were an inventory search, the Court's conclusion would be the same. Inventory searches are a well-defined exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371–72 (1987) ("[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."). A valid inventory search conducted by the police can include opening and closing containers with a vehicle, including opening a bag in the trunk. *People v. Willette*, 839 N.Y.S.2d 597, 597 (N.Y. App. Div. 2007). According to the New York Court of Appeals, an inventory search is valid if "the search, in accordance with the 'standardized procedure,' is designed to produce an inventory, and the search results are fully recorded in a usable format." *People v. Gomez*, 13 N.Y.3d 6, 11 (2009). There is no evidence in the record that the police ignored these requirements.

kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."). Accordingly, any appeal of this issue also would have been futile.

Fifth, the record also does not support petitioner's claim that the police forcibly obtained his DNA. Officer Kearns offered uncontroverted testimony regarding petitioner's consent to the taking of his DNA. (H. 946 ("A: . . . Asked [petitioner] if he ever heard of D.N.A. before. He said, yes. Said do you know what it is. He said, yes, he did. With your consent, we would like to take a sample of your D.N.A. . . . Q: What if anything did he say? A: He said, no, you can take it, I wasn't even in Nassau County.").) Therefore, because petitioner consented to the taking of his DNA, no warrant was necessary. *See, e.g.*, *People v. Beam*, 78 A.D.3d 1067, 1068 (N.Y. App. Div. 2010) ("On the record presented, and in light of the defendant's voluntary consent to the taking of DNA samples, the defendant effectively waived his contention that the DNA test results were obtained in violation of his rights."). In any event, this claim would not be have impacted the validity of his guilty plea or the result of the appeal.

Therefore, the Court concludes that petitioner did not receive constitutionally deficient assistance of appellate counsel. Accordingly, the Court denies petitioner's request for habeas relief on the grounds of ineffective assistance of appellate counsel.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 7, 2014
       Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Kathleen Rice, District Attorney of Nassau County, by Cristin N. Connell, Yael Levy, and Tammy J. Smiley, Assistant District Attorneys, 262 Old Country Road, Mineola, NY 11501, and Andre K. Cizmarik, Special Assistant District Attorney, Edwards Wildman Palmer LLP, 750 Lexington Avenue, New York, NY 10022, and Alison A. Reuter, Special Assistant District Attorney, Edwards Angell Palmer & Dodge LLP, 2800 Financial Plaza, Providence, RI 02903.